UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,  08-162
  RRP
    against
  NOTICE OF MOTION
JACOB NATANOV,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PLEASE TAKE NOTICE that upon the annexed affirmation of ALBERT Y. DAYAN, affirmed the 15th day of May, 2008, the affidavit of FBI Special Agent ELIZABETH NYGAARD and all of the proceedings heretofore had, defendant will move Judge Patterson of this Court at a Term for Motion to be held in the Southern District of New York, at a time and place fixed by this Court for the following relief:

1. To inspect the grand jury minutes and dismiss the indictment;

2. For a full hearing to suppress the evidence seized in this case to suppress all evidence seized from defendant in violation of his Fourth Amendment Rights;

Dated: Kew Gardens, New York
May 15, 2008

YOURS, etc.

*Albt Y. Dayan*

ALBERT Y. DAYAN
Attorney for defendant
80-02 Kew Gardens Road
Kew Gardens, N.Y. 11415
718-268-9400

TO: STEVEN C. LEE, Esq.
Assistant United States Attorney
One St. Andrew's Plaza
New York, N. Y. 10007
212-637-2413

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,                           08 CR 162

        against

JACOB NATANOV,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

      ALBERT Y. DAYAN, an attorney admitted to practice in the United States District Court for the Southern District of New York, under penalties of perjury, alleges as follows:

      That I am the attorney for defendant and respectfully submit this affirmation in support of his motion to inspect the grand jury minutes and dismiss the indictment herein for insufficient evidence and on further grounds that the evidence herein, insufficient as it is, resulted from property illegally seized from defendant, in violation of his Fourth Amendment rights.

      This is an indictment, in which there is no evidence of the commission of a substantive crime and therefore, this defendant is charged with a catch-all money laundering, in violation of 18 U.S.C. 1956(Please See Indictment Exhibit "A"). Without probable cause, FBI Special Agents entered his store, seized a Federal Express envelope and later, while in their own office, opened it. The

government now intends to use the evidence obtained therein, to wit, cash moneys against him in the present criminal prosecution.

Annexed herein as Exhibit "B", is a copy of the affidavit of FBI Special Agent Nygaard, that sets forth in the relevant underlying facts in this case.

She recites that in the year 2007, she interviewed some twenty elderly victims of a scheme to steal their money. The target would receive a phone call, claiming that the victim had won a huge cash prize, but cannot collect, until sending cash to a certain designated address.

One victim told the agent, that on June 20, 2007, she received a phone call from one Ross Green, who told her she had won a $500,000 prize, but could not claim it, until sending out $4,200 cash in an envelope to "Nellie's, at 108-11 Queens Boulevard, Flushing, New York", which she did.

The same victim told her of a phone call on June 21, 2007 from Judge Robert Goutlier, who told her she had actually had won $1,000,000, but would have to send an additional $6,250 cash to Nellie's, 108-11 Queens Boulevard, which she again did.

The same victim told her of a June 22, 2007 telephone call from Ross Green, who told her to send an additional $4,000 to KJ News Stand, 108-19 Queens Boulevard, which she did.

The same victim told her of a June 25, 2007 phone call from Judge Robert Goutlier who told her that he must send an additional $5,000 to Nellie's at 108-11 Queens Boulevard, and that if she did not pay, she would be in big trouble and could lose her home. She sent the cash, but mistakenly addressed the package to 101-11 Queens Boulevard.

What is clear from the affidavit of Special Agent Nygaard is that there is not a scintilla of evidence, identifying the person who made the phone calls, no evidence that defendant knew of the fraudulent scheme and no evidence of any attempt on the part of the defendant to conceal the source of the illegal funds, as the above are the requisite elements of 18 U.S.C. 1956.

On June 26, 2007, the agent entered Nellie's Jewelry Store, located at 108-09 Queens Boulevard, and observed two Federal Express Agents hand a package to Jacob Natanov, working behind the counter. It is not clear whether she heard Mr. Natanov tell the agents, in response to what name they should put down, that his name was "Jacob, Coyne, whatever." (Jacob Cohen is a name that Mr. Natanov is known by in his community). In response to an inquiry from Agent Nygaard as to what was in the package, he said he did not know, but it could be a magazine. She requested him to open the package, he did. It contained a Reader's Digest magazine in wrapping

paper, taped on three sides, with masking tape (the second package). The contents of what was inside the magazine were not visible because it was sealed with tape on all sides. Due to the careful taping around the magazine it was, therefore, obvious that the inside pages of the magazine had harbored an unidentified object. The agent took the second package with her and opened it in her office where she found approximately $4,000.

She finally recites that from March of 2006 to June of 2007, approximately 76 packages were sent by Federal Express to "Jeff Jacobs" and delivered to Nellie's Jewelry, at 108-11 Queens Boulevard in Forest Hills and from September 2006 to April 2007, approximately 32 packages were sent by Federal express to "E. Perez" and delivered to the barber shop at 55 West 47th Street, in Room 620B. She offered no information as to who sent them and as to the content.

ARGUMENT

THE EVIDENCE BEFORE THE GRAND JURY WAS INSUFFICIENT TO CONSTITUTE A CRIME AND THE EVIDENCE SEIZED FROM DEFENDANT BY SPECIAL AGENTS, WAS WITHOUT A REQUIRED SEARCH WARRANT AND WITHOUT PROBABLE CAUSE FOR SUCH SEARCH.

Defendant stands charged with money laundering, in violation of

18 U.S.C. 1956 (a) (1) (A) (i) and 1956 (a) (B) (i). The statute provides that the essential element of money laundering is that the accused knows "that the property involved in a financial transaction represents the proceeds of some form of illegal activity," with intent "to promote the carrying on of specified unlawful activity," or with intent to conceal .... proceeds under (a) (B) (i).

The identity of the person that allegedly defrauded the victims and whether the defendant had the requisite knowledge of the scheme, lies in mystery and is an essential element of the crime prosecuted herein. United States v. Caccia, 122 F. 3rd 156 (2nd Circ., 1997)

The Government has chosen to charge defendant with catch all statute of money laundering. However, even in a money laundering case, evidence must appear that the defendant knows that the money is a product of illegal activity. United States v. Cota, 953 F.2d 153 (2nd Circ. 1992) The mere possession of money cannot be criminalized. United v. Ruiz-Castra, 92 F.3rd 1519 (10th Circ., 1996). There is no evidence in this case from which an inference of guilt on the

where packages could be expected. There is not even suspicious conduct in this case, where defendant was confronted by the FBI in his own office. United States Caming, 968 F.2d 232.

What the Government seems to have overlooked is that the elements of the crime are not complete, without proof that defendant knew of the proceeds being from unlawful activity and without any evidence of defendant's attempt to conceal. The Government has not established that the defendant was the individual making the phone calls, nor can they establish what the defendant was going to do with the packages and whether he in fact knew that there was cash inside the packages before he had, possibly, handed them over to a third party. Absent such evidence, there could be no Prima Facia evidence of a crime. Ratzlif v. United States, 510 U.S. 135, 14 S.Ct. 655, 126 L.Ed.2d 615 (1984)

What is absent in this case, is evidence of the identity of the perpetrator of the fraud, so that there is no evidence that defendant was cognizant of the crime, itself. Indeed, there was no proof that defendant was even the intended recipient of the moneys seized. The packages yes, but not the moneys. Speculation is no substitution for proof. The problem in the case at bar is the absence of proof that defendant knew anything about the fraud and was the intended recipient of the moneys seized by the Special Agent. Specific intent is the missing ingredient. United States v. Garcia-Emanuel, 14 F.3rd 1469 (10th Circ., 1994)

request or that he was free to leave. The evidence seized should be suppressed and a hearing ordered on the issue

does not agree with counsel's argument that the agents physically as well as psychologically coerced the defendant to aquess, the agents had every reason dictated by the United States Constitution and by over two hundred years of case law to obtain a warrant in order to observe the contents of the second package. As is described by the agent in her affidavit, the package was closed on all sides by tape and there was no reasonable basis for the belief that the contents of the second package might pose a danger to the agent or that there was a legitimate concern for the preservation of evidence which might reasonably be thought to reside within the package. Arkansas v. Sanders, 442 U.S. 753 (1979), U.S. v. Chadwick, 433 U.S. 1, New York v. Belton, 453 U.S. 454 (1981), Florida v. Jimeno, 500 U.S. 248 (1991) (valid general consent to search may extend to unlocked containers), Bond v. U.S. 539 U.S. 344 (improper warrantless search of bus passenger's luggage). People v. Gokey, supra; U.S. v. Chadwick, 443, U.S. 1 (warrant-less search of locked footlocker improper – search took place 1 ½ hours after arrest and distance away from secured defendant).

In the instant case, the Agents were already in exclusive control of the bag taken from the defendant. It was not reasonable to believe the package harbored any weapons, nor can there be any ascertainable contention that the search of the wrapped up package was necessary for the preservation of

evidence. There was absolutely no reason why a warrant for a search of the second package contents could not have been obtained if there had in fact been any basis to suppose that the package contained either contraband or evidence of the crime. Once the Agents obtained 'exclusive control' over the property, and there is no longer the possibility of the gaining access to the property to destroy evidence, the search, in my respectful opinion, must be validated with a legally sufficient warrant.

Mr. Natanov has standing to challenge the legality of the search because he owns the store and operates it (Please See. Exhibit "C"). Moreover, the packages were addressed to the defendant and he had expected to receive the packages. Even if the defendant was going to pass the packages to a third party, he nonetheless would have possessed them with expectation of privacy, even if only for a limited period of time. Rakas v. Illinois, 439 U.S. 128, Minnesota v. Olsen 495 US 91 (Even overnight guest has standing).

WHEREFORE, defendant prays that the grand jury minutes be inspected and the indictment dismissed, or in the alternative, that a hearing be ordered to suppress the evidence seized, for violation of defendant's Fourth Amendment rights and for such other and further relief as may be deemed just and proper.

Dated: Kew Gardens, New York,
       May 15th, 2008

_____
ALBERT Y. DAYAN